And Mrs. DeLaurel, whenever you're ready, we'll hear from you. Good morning. May it please the Court. Jackie DeLaurel for Kaylan Bell. Your Honors, Kaylan Bell has not touched a child inappropriately in his adult life, and yet the District Court nonetheless concluded. You know, you made the statement in your brief, and I must confess, and I'll tell you so you can address it. A couple of times in your brief, you said there was a 10-year gap of offending conduct. And so that prompted me. I said, that doesn't seem consistent with the record that I read. So I went back and found that he had, however you define molesting, he had molested children virtually within months of every time he was in jail. He was never out of jail more than 10 months. And he had offenses in his adult life in 2003, 2004, again in 2004, again in 2004. Then he went to jail. He was released. 2010, another incident. And then he was re-arrested in 2010, and it's been in jail since. Now, all the incidents, sure, may not have been, they weren't prosecuted. Not all of them may have been crimes, but they were, one was stalking. Others were basically going up to kids and masturbating in front of them and asking them to come close and asking if they wanted to touch. He didn't touch them. So you can make the statement safely, he didn't do any, he wasn't violent against anybody, at least in an obvious sense. But that doesn't get you anywhere. The problem is that he had this sexual attraction. He had a pedophilia, and he went to these kids at these schools, and he couldn't help himself. It was conduct after conduct. For 10 years, you said there was a gap in offending conduct, and every opportunity he got, he was out there. I counted at least six or seven incidents, and there are probably more. And so that, it doesn't advance the ball, because all the experts focused on this conduct. Just to clarify, Your Honor, that 10-and-a-half-year gap is between exposure incidents. So that is the last... Was he in prison? He was in prison for all but 10 months of that time. So how does that get you much benefit? In other words, as soon as he gets out in the public, he was out in about a total of 10 months, off and on. That's right. Yeah. And during these 10 months, all of those conducts occurred that I just listed to you. In 2004, he was out three incidents in 2004 alone. And so the... I'm just correcting your argument. I'm taken back by the notion that you try to suggest that the government didn't have any basis to do what it did in this case because he was innocent, there was a gap in his conduct. It's much more productive for the argument if you face all his adverse facts that were relied on and then address them and say, that's not enough. I understand, Your Honor. Okay. Okay. Fair enough. There are four exposure offenses in Mr. Bell's adult life. Three of them occurred when he was 18 or 19 years old. Well, there's a lot of them that weren't offenses. I mean, there was a stalking time he... Do you remember? And there was... He was never charged. Nobody really formally complained. He admitted to these things. There were times when... Many of the times, he never touched, but he communicated with the kids and said, come here, or you want to touch, or... He had kids showing. He got sexual gratification from masturbating in front of children. With respect to that following incident, I would just like to note that that is only in the record at all because of his own disclosure to treatment providers. No question about it. There's several of those. There's several of those. You get the benefit of that. That's correct, Your Honor. And in Anton... We're not measuring how many times he was convicted or how many times he was charged. We're talking about whether this man should be out in public or should be held until he can be treated for his pedophilia. Your Honor, the Adam Moleschak has a very specific question, which is, as a result of a serious mental illness, whether this person will have serious difficulty refraining from sexually violent conduct or child molestation. Child molestation. And child molestation is a very broad term. I mean, the difference between child molestation and exposure is exposure is not enough. If somebody urinates behind a tree in front of a kid, that's not enough. Child molestation, however, if he exposes himself to the child for sexual purposes or gratification, now you have child molestation. He's using and exploiting the children for that purpose. Your Honor, that is not in the statute or in the regulations, and this Court has never so held in any prior case. Your argument is simple exposure is not molestation? Yes, and also that the District Court in this case relied on a clearly erroneous factual finding to conclude that more than that occurred. Well, wait, wait, wait, wait. Let's talk about that. Because the standard of review, I don't think you really talk about clearly erroneous. But factual findings are measured whether we think they're clearly erroneous, correct? Yes, that's right. What, tell me one fact that you think is clearly erroneous. At Joint Appendix 379, the District Court relies on its belief that Kalen Bell admitted at his revocation hearing that he threatened and followed the boys in the 2015 case. But just let me say that, even if he didn't rely on that, there's enough evidence on the record that he could rely on, correct? I don't believe so, Your Honor. Well, let's review it. Let's review it. He didn't contest those facts at the revocation petition, did he? He did, Your Honor. He admitted the exposure. He never has admitted following or threatening. He said that on the record? On the record at his revocation? The government? No, I thought he said he didn't object to the facts. And the reason he didn't raise any question about the stick incident, where he threatened to shove that, at least it's asserted, to the little boys. I thought he said, I didn't want to object to it because my lawyer told me then that would never come up, wasn't going to be part of it. Is that not correct? He never admitted it in the petition. I didn't say admitted. He didn't provide his release. I didn't say admitted. I said, let me ask you this way. Aren't there facts in this record on which the judge could conclude that he had been involved in molestation? Yes? Not as an adult, Your Honor. No. And we can look to Dr. Barnett's opinions. What do you understand molestation to be? Didn't we in Mills say it's any exploitation of a minor for sexual purposes? That's interpreting a different statute, Your Honor. But it's still a molestation, isn't it? It's defining sexual exploitation, but it's not based on the regulations in this case. And the regulations interpreting the Adam Walsh Act need to be very targeted toward a very specific subset of individuals. As the Supreme Court held in the Kansas v. significantly different than a typical criminal punishment. I don't think you're right on your understanding of what the factual record is. There was testimony before this judge from the probation officer. She said, she told him what had happened, didn't she? She testified to the hearsay statements of the boys to which defense objected. That's correct. You can use hearsay. But it's important that the district court here was not making a credibility determination between probation officer Kelly and Mr. Best. Look at this record. There's evidence on this record that we're reviewing to see if his factual conclusion was clearly erroneous. I don't see how it was when, in fact, he had evidence before him of exactly this. That she, was the police statement, did the police officer testify or just his statement? No. But the probation officer testified and she said what the police had told her and what the little boys had told her. Why isn't that factual basis on which you can make a conclusion? Well, it could have been the basis of a credibility determination, but the district court didn't make one in this case. The district court relied solely on its belief that Kalen had admitted this conduct at a supervised release. So you would have us send it back and go, just say you acknowledge her testimony on the record and then you lose on that point? Well, I think the district court is bound to... Then do you lose on that point? Well... If we were to send it back on that point and go... We don't know because the district court never resolved the credibility issue because he believed that this conduct was admitted. And because it wasn't, it's for the district court in the first instance, it would be impossible for this court to make a credibility determination having not seen any of these witnesses. What about the... What happened at all? You say there's no factual basis in this record to say this was molestation or a sexually violent conduct? That's correct because both of those... What do you understand sexual molestation to mean? How do you define it? I think that there's a definition in... No, just tell me how you define it. Sure, which would be limited to manufacturing child pornography or child prostitution. So that it's a very targeted and very serious crime that is sufficient to distinguish... So if an adult brings a child into the bedroom and says, and then he masturbates in front of her... I believe that would be sexual exploitation. Is that sexual molestation? Yes, I believe it would be. Isn't that just what happened here? No, Your Honor. The evidence that was uncontested about the 2015 incident is simply that he exposed himself. Any suggestion that he threatened the boys or that he followed them was very much contested. Well, it's uncontested that he masturbated in front of the kids, he invited them to come over, he showed the kids a wallet with some cash, they started throwing stones at him. That's all a thing. And he picked up a stick, and they ended up separating. And some adult had to come up and tell him to put his stuff away, and his pants or whatever it was, and left. And they hailed a truck. And they were so disturbed, they hailed a truck, used his cell phone and called the police, and he was arrested. I think Dr. Barnett... Those were the facts of that incident. Right, best in his favor. My understanding from the facts is that he had already covered himself before the adult arrived. That would be the one factual correction I would make. Okay, fair enough. But I think it's important to look at Dr. Barnett's previous evaluations. No, wait a second. I want to go back to the facts for one second. If the facts are in this record on which we can decide, you don't agree with that, but if we can, does that make out sexual molestation, as the probation officer testified? I think it could be sexually violent conduct if there was a threat. Why don't you address... Why do you induct in sexual molestation? You agreed that if an adult took a child into a bedroom and masturbated in front of the child, that's sexual molestation. Here, he goes to a schoolyard. He goes to almost the same schoolyard, and he gets kids, and they're 20 feet away, and he starts masturbating and inviting them to come over and touch. They don't do it. They're repulsed by it all. And then he offers them. I don't know if he offers them. He opens his billfold, shows some cash to the kids, and that's not sexual molestation? If the threats and following were to be believed... No threats, no threat. They're no threat. He invited them to participate, and he got sexually gratified by masturbating in front of the children. If he directed them to watch, then I believe it would be sexual molestation. He invited them. He says, come on over, didn't he? Uncontested. He did not admit to the come here statement, Your Honor. I'm going to take you back to my question. It's exactly the same question, but I'm just saying as to the facts, the probation officer testified to that. If you accept those facts, and I know you do not accept them in this record, but if those are the facts, I'm asking you, do you think that qualifies as molestation? Yes, and even if it does, though, I think it's important to recognize that, however imperfectly, in light of his borderline personality disorder and borderline intellectual functioning, Mr. Bell has endeavored since the age of 14 when he last inappropriately touched a child. I got you, but I think you need to be more specific on... So the factual question, we'll resolve that as to whether or not we can get there. I think we understand your position. You say Dr. Barnett's testimony is no good now. That's correct. It was good two times before when it was favorable to you, but it's not good the third time. Well, it's fundamentally inconsistent, Your Honor, because... Why? She has the 2015 incident. She now sees that he can't help himself. She's relying on the same misperception that the district court was relying on that this conduct actually occurred. Well, he agreed to it. I mean, he disputed... There's a dispute about the stick. Set that aside. I think the stick's almost nothing. The problem was that he went in front of children who were only 15 to 20 feet away and masturbated in front of them and engaged them in something. The testimony, I thought, was undisputed, that he said, come on over, or come here, and they refused, or you want a touch, or something like that. But Dr. Barnett's first two opinions were also relying on conduct very similar to that in prior incidents. She says not. She draws the distinction that she twice has testified he should not be committed. And now she testifies he should be committed. This is repetition. She says it's escalating. She says because this time he's pursuing the children. And I think the record is he got within five feet of the children. According to the children. Well, that's the record. I think everything is relying on this. But isn't that right? She said his conduct is escalating. And now I see a difference. She may not like the distinction, but she draws it, and she goes, he is now doing this, and he's pursuing the children. He went after those children. I don't use the word. He went toward those children. That's an escalation. I think that is a sign, as a professional, she testifies, that shows he is dangerous. That's precisely my point, Your Honor, is that she's relying exclusively on this escalating conduct. And the conduct is only escalating if he did, in fact, follow the boys and did, in fact, threaten them. Why can't she believe that? Why can't she believe the probation officer? Because she also never had the opportunity to make a credibility determination. It's not in her expertise to be doing that. Well, you might say there's a problem with her methodology, but she, every doctor... But she had a reason for changing. Your big argument is she's inconsistent in the third report. That's correct. I found it just to the contrary. It reflected her honesty. In the first report, she said he does not need to be committed. And this third report pushes her over the line. And in the first two reports, he already had a static 99R score of 10. He already had the prior hands-on... I understand, so she was giving him the benefit of the doubt. In this incident, after the 2015 incident, she couldn't give him the benefit of the doubt anymore. Well, she concluded in her 2014 opinion that even if he were to reoffend, it would be an act of exhibitionism and not an act of hands-on offending. And, in fact, that's what happened. So, if the... Do you challenge, do you challenge step two, that he has a serious mental illness currently? Do you challenge that as well? No, we do not. Okay. It's just that third problem. We are on the third problem, Your Honor. I understand. Exclusively. I would also just note, you know, Dr. Plodd's... With respect to the actuarial instruments, they are similar to what's used by life insurance companies. They don't represent the actual recidivism risk of an individual. And Dr. Plodd testified that they don't... That research doesn't put a lot of stock in this. So, you don't challenge... You say, then, he was... He has and is guilty of child molestation. He is? That's what you admit? No, Your Honor, we do not because we don't believe that the district... So, of the three, you're contesting only the last one? You know, the act, the illness, and future dangerousness. What do you... We are only challenging on the third prong. And the third prong applies only to individuals who will have a serious difficulty refraining from two particular types of conduct, sexually violent conduct and child molestation. We concede that when he was 14 years old and a juvenile himself, he did commit an offense of child molestation. That's undisputed in the record. I thought, you know, I must say I'm having trouble following your argument. I thought you agreed that masturbating in front of children for sexual gratification is child molestation, using the children to gratify your sexual desires. No, Your Honor, only if they're directed to watch. The evidence in prior instances, and we believe in this most recent offense, is simply that the children were present... Let's not argue the facts. I want to argue the law on this. You mean if he goes up in the schoolyard and he has a circle of young kids around there and he then starts masturbating in front of them because he's gratified by that, that's not child molestation? Is that your argument? That's correct, Your Honor. All right. See, my light is on. Okay, thank you. You do have rebuttal. Mr. Anderson? May it please the Court, my name is Michael Anderson and I represent the United States. The question before this Court, as the Court has pointed out, is whether masturbating in front of children while seeking or soliciting sexual contact from them is child molestation under the Adam Walsh Act, and it absolutely is. The definition of child molestation is broad. It includes any unlawful conduct of a sexual nature with or the sexual exploitation... What's the best case for us to find that definition in, or do we just use common dictionary definitions? Well, Your Honor, the district courts that have analyzed this issue have drawn, I think, a helpful distinction. They have distinguished between the mere exposure of one's genitals without anything else. That's the Abragana case, the Turner case, the Revlin case. Those cases identify that distinction. And the type of conduct that Mr. Bell has engaged in... Forget Mr. Bell. Just tell me definitionally what they say about what's the distinction. The distinction is exposing one's penis and then coupling that exposure with sexual stimulation directed at children. The mere exposure of one's genitals... So your argument is, legally, if somebody exposes himself for sexual gratification in front of children, directed at children, that is molestation? Yes, Your Honor. And I think that plays out in... And what cases do we have for that? Your Honor, I think that the Abragana case from the District of Hawaii, the Turner case from the Eastern District of North Carolina, and the Revlin case from the Eastern District of North Carolina, all of those set out that distinction. In Abragana, for example... Tell me what distinction. Are you saying simple exposure is molestation? Your Honor, I'm not sure if simple... I'm talking about the exposure of one's genitals coupled with sexual stimulation directed at children for the respondent's gratification. I don't know what all that means to tell you, quite frankly. But let me ask you this. I don't know that we have to decide this point. Do you have a view on whether or not simple exposure to children, when one does that for one's own sexual gratification, is that enough to be molestation under the statute? I believe so, Your Honor. Again, the definition of child molestation, the regulatory definition is broad. It includes any unlawful conduct of the sexual nature with or the sexual... But you think that is molestation, but you think we don't have to decide that in this case? Because you think you have more, or you just say you would have us decided on just the exposure with the desire for gratification? So I think... Let me clarify my point, Your Honor. Just the simple exposure, what I colloquially call the man with the trench coat. Right. The court doesn't need to decide whether that is child molestation. The issue before this court is Mr. Bell's conduct, where he has exposed himself 10, 15, maybe 20 feet away from children and masturbated in front of those children for his own sexual gratification. How did we get that factually? You heard the discussion that we had with the other side? I did, Your Honor. How did we get there factually in this case?  Let me start with May 2004. In May 2004, Mr. Bell went to a field that was across the street from the elementary school. He stood 10 to 15 feet away from the children, and he masturbated. Not only did he masturbate in front of those children, but he wanted the children to see him. That's what he told Dr. Barnett. He told police that he knew the children had seen him. He told Dr. Barnett that he wanted the children to see him and maybe like it, and come up to him and touch his penis. And then when the children didn't do that, the police reports show us exactly what Mr. Bell did. So you think any one of those prior incidents that he has would qualify for the first step? Absolutely, Your Honor. Absolutely. You know, we seem to be focusing on the most recent incident. That's right. By the way, there's something we said. He doesn't remember a lot, and he says, I can't remember dates and specifics, and he doesn't remember. He's caught sometimes, and he finally has to admit he did know that, and he wasn't telling the truth. But are you saying we can just stay away in total from the incident at the park for a number one? The February 2015 incident? Well, for resolving prong one, I think absolutely the court can stay away from that February 2015 incident. When we get to prong three, whether he would have serious difficulty, I think the court needs to take that into account. But let's even assume that Mr. Bell did not chase those boys. Let's assume that he didn't threaten those boys in February 2015. His conduct is still in escalation. All he did was expose himself. That's what he says on that date. Doesn't he say that? All I did was expose myself. He says that he exposed his penis and began playing with it. That was the testimony at trial. I think that's enough to be exposure and masturbation. When I asked him at trial whether he showed those boys money, his testimony was, I might have, yeah. And even with those facts set aside, the conduct that day in February 2015 was in escalation just given the sheer speed of his offending. He reoffended within 13 days of his release. Can we take into account the reaction by the boys? In other words, if the boys hadn't seen him, it was just a casual observation at a distance and it didn't affect them. They were very troubled. They threw rocks, they stopped a truck, borrowed the cell phone and called the police. And threatened to shoot him. And threatened to shoot him, that's right. I think all that factors in here. I think, again, there is a distinction to be drawn between what I, again, call the man in the trench coat. Maybe somebody who's kind of off in the woods. Well, let's don't do that. Let's just talk about, if you want to talk about escalation. Sure. Let's talk about what he did. That's right. Because it wasn't Barnett. And the third time she testified, the first two times she testified for him. The third time she testifies against him, and she said, basically, I'm changing my opinion because now his conduct is escalating. I can't remember the exact words. I can find them. He approached the boys. Absolutely. And that, to me, is a very bad thing because, I'm paraphrasing, because that concerns me. If he's going after these children. And, by the way, the testimony is, he may have been a ways away from her, but he closed to within at least five feet. Isn't that testimony? That's the statement from the boys, that he got to within five feet. And he wouldn't back up. The boys, did they actually throw rocks at him? They threw rocks at him to try to get him to stop. Correct. And then they said, we got a gun, we're going to shoot you. And that didn't stop him. That's right. It was only when another adult male, I think it was a male, but another adult showed up and said to him, that's enough, cut it, get out of here, stop that. That's right. And I think the fact that Mr. Bell pursued those boys so vigorously. Isn't that what Barnett was talking about? It is absolutely what she's talking about. And that shows just how compelled by his deviance he was. There was nothing those boys could do to stop him. You know, I asked the other side that, and she said that Dr. Barnett didn't have an idea, didn't have an opportunity to test the credibility of those boys, I guess, or the probation officer. What about that? How do we get to the point that the court is allowed and we're allowed to look at those facts? Well, Your Honor, those facts were in evidence before the court. The probation officer, Kelly, showed up at the scene. She spoke to those boys and she testified about what they told her. Oh, I know what she testified to. I think we all do. Well, Dr. Barnett just assumed those facts, as every expert does. You assume a set of facts and come to a conclusion. That's absolutely right. And it necessarily is on a dry record when the experts look at it. They're not going out and interviewing all these witnesses. That's just how this process works. I agree with that, and that's a point well taken. But did you hear the other side's argument? They go, he didn't, the judge didn't find on the probation officer's testimony. He just said it's based on her client's admitting it, and she said my client never admitted it. So that's where she finds the error and the clearly erroneous factual conclusion. And I disagree with that reading of the court's order. So the court in its order laid out expressly what evidence it thought supported the threat, and the evidence included probation officer Kelly's testimony. The court then laid out expressly Mr. Bell's disagreements with that testimony, or with that evidence, and then later in its opinion, the court did say that Mr. Bell admitted to those facts at a supervised release hearing, but the court also said that the record shows that in 2015 Mr. Bell threatened those boys. Well, it's a technical point, but on the factual record, I thought that he did admit to those facts at that hearing. And I think he did, Your Honor. Didn't he say he didn't object? Just take a second and walk through that. Sure. Probation officer Kelly testified that at that revocation proceeding, the district court read the petition to Mr. Bell and the factual basis that reported the threat and asked Mr. Bell directly if anything in that factual petition was incorrect, if he disputed any of it, if he disagreed with any of it. That was Mr. Bell's opportunity to say I didn't threaten those boys. And he didn't do that, did he? He did not do that. He tried to explain it away later by saying part of that wasn't going to be used against me, so I didn't go with it. That was actually, I think, the stick, I think, quite frankly. It was about the threat involving the stick. Right. But what Mr. Bell said at his revocation proceeding was simply no, that he didn't disagree, that he didn't dispute. Respectfully, I think that is an admission. But there was other evidence to support the fact that this threat was made, the fact that Mr. Bell chased these boys. The boys repeatedly and independently reported the chasing and the threat to police. They reported it to Probation Officer Kelly, who testified that she believed the boys. In fact, the only evidence presented at trial that Mr. Bell did not make that threat or that he did not chase those boys was Mr. Bell's own statement from the witness stand. But as this court noted in the record, much of that testimony Mr. Bell simply couldn't remember, and I think I know the answer why. When he was arrested for that February 2015 offense, he blew a .146. His blood alcohol content was .146 and .149. Given that level of intoxication, with all due respect to him, he is not a credible witness as to what happened that day. And his testimony— Let me ask this. I can't remember. Did Barnett—of course, I think two experts said that he would be dangerous. One said that he would not be. Yes, sir. Was any basis of her opinion, her changing opinion, had anything to do with his dreams or fantasies about raping and killing, cutting the throats of children? Was that included in the escalation, or had he been having those all along? So he had those in state prison. Those preceded the February 2015 offense. I got you. But when Dr. Barnett wrote her opinions in 2013 and 2014, Ms. Rebell had not committed any sexual offense at all, one that he hadn't been convicted of, at least, since 2004. That was his last conviction for a sexual offense. That was almost a decade before she wrote her opinion in 2013. He also faced significant conditions of supervision if he were released, conditions that he had not tested yet. And Dr. Barnett thought that when you combine those two things, that there were sufficient protective factors, such that Mr. Bell would not have serious difficulty refraining. But his February 2015 offense, in which he reoffended sexually with prepubescent boys, despite nearly daily contact with United States probation, he was meeting with his probation officer almost every single day, and, in fact, had a scheduled meeting on the day that he got drunk and went to that park where he had seen elementary school children before and reoffended sexually with them. He was very anxious to have that GPS monitor off him, wasn't he? Throughout his supervision, he was. But the GPS monitor was still on him. In February 2015... I didn't say that it wasn't on him, but I said he wanted it off, didn't he? He absolutely wanted it off. And the point that I was trying to make, the corollary to that, is he didn't get it off. He was still wearing it when he went to the park. He skipped a meeting with probation, and while on GPS went to a park where he had seen elementary school children. Somebody could have showed up at any point. What, if any, role does the testimony by the probation officer play here? Maybe it doesn't play any. When she said, I've been supervising sex offenders for 20 years, and this defendant has the least amount of control over his impulses of anybody I've ever seen. And she said, I talked to people in my office, and they agreed. Does that play any role in our decision? I think that does play a role. The person who is supervising Mr. Bell in the community, the person who is meeting with him nearly every single day... And who is an expert in supervision of sexual offenders. Correct. Who had 20 years of experience as a probation officer, both at the state and federal level, who had talked to her colleagues at United States Probation Office in Idaho. They believed that Mr. Bell had, of all of the sex offenders that they had ever supervised, had the least control over sexual impulses. And the facts presented at trial bore that out. And I think that's important too. As an adult, Mr. Bell has spent less than three years in the community. As an adult, since he turned 18. Less than three. Did Dr. Barnett rely on that at all? What the probation officer said? She did not because she didn't have... Well, she didn't in her opinion, Your Honor. She didn't have that testimony in front of her at the time that she wrote her report. I don't remember whether she said in her testimony that she specifically relied on that. But certainly, Dr. Barnett was in that courtroom for all of the testimony both days. And her probation officer, Kelly, testified about that. That is certainly something that could factor into it. Did the mother testify? She did, Your Honor. And she testified for whom? She testified for the government, Your Honor. She said her son needed structure. She said that her son needed structure, that he needed help, and that he needed placement in a secure facility because he couldn't stop himself from hurting children. But she loves her son, doesn't she? She does, Your Honor. And so she said the mother, she may not be an expert in a lot of ways, but she knows her son, and she said, testified for the government that she thought he needed to be in an institution or confined. That's right. Because she was very concerned of what would happen. She was very concerned, Your Honor. And Mr. Bell's counsel at trial asked her directly, Ms. Durant, do you know that if your son is civilly committed that he can never come out of prison? And she said yes. And she still testified on behalf of the government because she knew that her son needed help, because she knew that children needed to be safe in the community. Well, is he there forever? Your Honor, it's not a life sentence. He can, under the treatment and... He can have re-evaluations, can't he? Absolutely, he can have re-evaluations. He can go through the treatment if he progresses far enough. Again, the inquiry is always whether he would have serious difficulty. If he progresses far enough in treatment... That's not my inquiry. My inquiry is this confinement doesn't end discussion about him being out in society, does it? It does not. He'd have an opportunity at some point. I'm not saying if he'll meet those conditions. But this isn't one time, it's over. If you are confined, that's it. That's absolutely right. He has an opportunity to go through treatment, to learn to control himself. It's just that at this point, he hasn't. Hasn't he indicated he needs help? He did, Your Honor. And he indicated that he needs help, which in a way is an admission that he has a sexual problem and that he needs help controlling it. And he's never meaningfully pursued that help. He testified at trial that he has always wanted sex offender treatment. But when he gets into sex offender treatment, he never meaningfully pursues it. In 2003, he cheated his way through treatment. It was the only sex offender treatment that he had ever completed. And then he told law enforcement... It looks to me in a number of ways. He himself is torn. I read the record. He looks like he knows he has a problem. He knows maybe he can't control it. But he also wants to have some freedom. He wants some... He wanted a relationship with Kenny. That's right. Another person, which maybe he should or shouldn't have had. But he's torn himself, I think, on this. Do you think that? I think he is, Your Honor. On the record? Absolutely. And I think he recognizes that he can't control his behavior. In fact, he's admitted that repeatedly. In 2012 to sex offender treatment providers. In 2013 to Dr. Barnett while being evaluated for civil commitment. He admitted it again in 2015 to his federal probation officer. And again in 2015 to his mother. And here is a very important line that he said. He said that my sexual behaviors are beyond my control. He wrote that in a letter to his mother. My behaviors are beyond my control. There's some other movement inside of me. Did you think the fact that Dr. Barnett had testified that he should not be confined twice previously strengthened her testimony in your case that now he should be? Absolutely. Just like Probation Officer Kelly, Dr. Barnett gave Mr. Bell every single opportunity he could to get out in the community, to show growth, to demonstrate maturation, to show some level of control. And when he got to February 2015, even though he had been referred for civil commitment twice, even though he had participated in sex offender treatment at ages 17, 18, 27, 28, 29, even though he had been incarcerated for his prior conduct, when he knows that he's under the microscope, when he knows that there are serious consequences, not only criminally but potentially civil commitment, within 13 days of his release, he skips a scheduled meeting with probation, he goes to a park, he gets drunk, he re-offends sexually with prepubescent children. Despite all of the conditions, despite all of that history, the fact that he still couldn't control himself shows that he would have serious difficulty refraining from sexually violent conduct or child molestation if released. And unless there are any other questions from the court, I will conclude on that. Thank you, Mr. Anderson. Thank you, Your Honor. Thank you, Your Honor. I'd like to clear up a few points about Probation Officer Kelly's testimony. She was present at the revocation hearing, but she was testifying actually to that judge's particular traditional practices. At JA-160 and 161, she explains, you know, the government had the burden on this issue and did not present a transcript of the supervised release revocation. They did not call the boys to testify. And the petition to which Mr. Bell said he had no objection is at JA-471, which merely notes that the victims maintained that certain things occurred. I would note that three of the cases that the government points the court to, Abregana, Turner, and Revlin, share one thing, which is that all of those respondents were released because the court concluded that in spite of their behavior, which was in fact much worse than Mr. Bell's, they would not have serious difficulty refraining from sexually violent conduct or child molestation. In Mr. Abregana's case, he had a three-year relationship with a 12- to 16-year-old boy. In Mr. Turner's case, he was frequently sending suggestive pictures with young girls soliciting them for sexual activity, including the daughters of his girlfriend. I would note that my colleague's argument explains precisely how pervasive the district court's factual error was. Dr. Barnett, Dr. Hastings, and the district court all relied, in almost exclusive part, on this, quote, escalation of conduct, which relied on the threats and the following that they believed Mr. Bell did in the 2015 incident. I also wanted to clarify, we're not challenging prongs one or two. This is all with respect to the forward-looking inquiry about Mr. Bell's serious difficulty refraining. And for these reasons, we'd ask that the court vacate and remand to the district court for correction of its factual findings. Thank you. Thank you, Mr. Law. All right, we'll adjourn court for the day, and then we'll come down and greet counsel. And then we'll come back, and I understand that in this context, in the law school, we will participate in a question-and-answer session. We won't decide your cases from the bench. We'll take those under consideration. As everyone knows, oral argument is just one phase of the process. We will, this morning, go back and conference a case and express our opinions to each other, assign the writing assignment, and the opinions will then come out in writing for the parties to see and the public to see, too. So let's adjourn court now, and we'll come down and greet counsel.
judges: Paul V. Niemeyer, William B. Traxler Jr., Dennis W. Shedd